**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

DEREK RAY JACKSON, JR., #1049863,

                             Petitioner,

v.                                        ACTION NO. 2:13cv355

HAROLD CLARKE,
Director of the Virginia Department of Corrections,

                             Respondent.

**UNITED STATES MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

      This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Civil Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Court RECOMMENDS that the petition for writ of habeas corpus be GRANTED.

**I. STATEMENT OF THE CASE**

      On December 28, 2001, Petitioner Derek Ray Jackson, Jr., shot and killed Nikolaus Arvantis while attempting to rob his store. Pet'r's Mem. 4, ECF No. 1.[1] He was seventeen years old. Pet'r's Mem. 1. He was arrested and charged with capital murder, attempted robbery, and two counts of use of a firearm in commission of a felony. Pet. Ex. A ¶ 1, ECF No. 1-1. While incarcerated pending disposition of those charges, Petitioner was found to be incompetent to

---

[1] The Petition, ECF No. 1, consists of two documents: the first is the standard form "Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody" ("Pet."). The second is Petitioner's memorandum in support of his Petition, styled "Petition for Writ of Habeas Corpus" ("Pet'r's Mem.").

stand trial. Pet'r's Mem. 6-7. Disposition was postponed until, after treatment, he was deemed competent in August 2004. Pet'r's Mem. 7-8.

On September 1, 2004, in the Circuit Court for the City of Chesapeake, pursuant to a plea agreement, Petitioner pled guilty to capital murder. Pet. Ex. A, ECF No. 1-1. In exchange, the Commonwealth agreed to drop the remaining charges. *Id.* at ¶ 3. Petitioner was sentenced on the same day to life in prison. Ex. A, at 4 ("Disposition Notice"). Petitioner did not directly appeal his conviction. Pet. 6. Nor did he file a Petition for Writ of Habeas Corpus in Virginia state court. Pet. 6, 12.

Petitioner filed the instant Petition on June 24, 2013. Pet. 1. The sole ground Petitioner alleges for relief is that, because he was a juvenile at the time he committed the charged offense, his mandatory sentence of life-without-parole was unconstitutional under *Miller v. Alabama*, 132 S. Ct. 2455 (2012) (finding sentencing schemes mandating life sentences without parole unconstitutional when applied to juvenile defendants). Pet. 6. Respondent filed a Motion to Dismiss and a Rule 5 Answer on October 7, 2013. ECF Nos. 5 & 6.[2] Petitioner has requested discovery and an evidentiary hearing on the issues presented in his Petition. Pet'r's Mem. 2. Petitioner has also requested oral argument. Pet'r's Notice of Request for Oral Argument, ECF No. 16-1. The Court DENIES all three requests, as the Court may adequately resolve the issues as presented in the briefs and purely legal issues are presented. *See* R. 8 of the Rules Governing Section 2254 Cases. Accordingly, this matter is ripe for review.

---

[2] A Corrected Motion to Dismiss was filed Oct. 8, 2013. ECF No. 8.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Exhaustion and Procedural Default

In order for this Court to review the merits of Petitioner's claims, each claim must be exhausted. *See* 28 U.S.C. § 2254(b) (2012). The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993); *see also*, *Jones v. Sussex I State Prison*, 591 F.3d 707, 712-13 (4th Cir. 2010). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). However, 28 U.S.C. § 2254(b)(1)(b) excuses a petitioner from exhausting his claim in state court when either "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." Thus, where it is clear to the Court that an unexhausted claim would be procedurally barred in state court, it may excuse the lack of exhaustion for that claim. *See Harris v. Reed*, 489 U.S. 255, 269 (1989) (O'Connor, J., concurring).

It is undisputed that Petitioner here has failed to exhaust his claims, in that he has sought neither direct appeal nor collateral review of his conviction or sentence in state court. Petitioner contends that he should be excused from exhaustion under Section 2254(b)(1)(b) because his *Miller* claim is time-barred in Virginia. Pet'r's Reply in Supp. of Pet. and Opp. to Resp't's Mot. to Dismiss and R. 5 Answer 3, ECF No. 16 [hereinafter "Pet'r's Reply"] (citing *Johnson v.*

*Ponton*, No. 3:13cv404, 2013 WL 5663068, at *3 (E.D. Va. Oct. 16, 2013) (Spencer)). *But see Contreras v. Davis*, No. 1:13cv772, at *9 n.2 (E.D. Va. Dec. 11, 2013) (Cacheris) (dictum) ("Petitioner's claims [including his *Miller* claim] are clearly unexhausted because he never presented them in any state proceeding."). Respondent argues, however, that Petitioner's claim is not exhausted because he does have an avenue for pursuing his claim through a petition for habeas corpus in state court. Resp't's Corrected Mem. Supp. Mot. Dismiss, ¶¶ 5-6, ECF No. 11 [hereinafter "Resp't's Mem."] (citing *Mueller v. Murray*, 478 S.E. 2d 542, 545-49 (Va. 1996)). Because Virginia has adopted the *Teague v. Lane*, 489 U.S. 288 (1989), standard for determining the retroactivity of a "new" constitutional rule, Respondent contends that Virginia courts could reach the merits of an otherwise time-barred claim that relies on a retroactive new rule. *Id.*

In *Johnson*, the court found that the petitioner's claim was exhausted because it was time-barred under Virginia Code Section 8.01-654(A)(2) and procedurally barred under Section 8.01-654(B)(2) and *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974). *Johnson*, 2013 WL 5663068, at *3. The court gave particular weight to Virginia's strict adherence to its statute of limitations for habeas corpus petitions. *Id.* Virginia Code Section 8.01-654(A)(2) allows habeas corpus petitions to be filed only within the later of two years from the entry of final judgment or one year from the final disposition of the petitioner's direct appeals. The *Johnson* court cites *Hines v. Kuplinski*, 591 S.E.2d 692 (Va. 2004), in which the Supreme Court of Virginia held that Section 8.01-654(A)(2) "contains no exception allowing a petition to be filed after the expiration of these limitations periods." *Hines*, 591 S.E.2d at 693.

4

Despite this holding, however, the *Hines* court appears to have left some room for a narrow exception. *Id.* There, the court held that the petitioner's ineffective assistance of counsel claim was time-barred, but not simply because it was filed after the period had run. *Id.* Instead, the court considered whether or not the petitioner could have discovered the information on which his habeas claim was based before the Section 8.01-654(A)(2) limit ran. *Id.* Because it determined that he could have, it concluded that the petitioner had not established "the predicate for his claimed right to file a late petition." *Id.*

The *Johnson* court did not need to address whether the petitioner could attempt to overcome these bars on a theory that *Miller* is retroactive under *Teague*, because there, the respondent stipulated that the petitioner's claim was time-barred. *Johnson*, 32013 WL 5663068, at *3. Here, on the other hand, Respondent states that he "would certainly be prepared to argue that [Petitioner's claim] is time-barred[,]" but argues that the principle of comity requires that a Virginia court be given the opportunity to actually make that determination first. Resp't's Mem. ¶ 6. As Respondent suggests, the Supreme Court of Virginia has not ruled on the retroactivity of the *Miller* rule.

Respondent argues that because the Supreme Court of Virginia adopted *Teague*'s retroactivity exceptions in *Mueller v. Murray*, 478 S.E. 2d 542 (Va. 1996), Petitioner could make his *Teague* retroactivity argument in state court and, if successful, receive an adjudication on the merits of his *Miller* claim. Resp't's Mem. ¶ 6. *Mueller* concerned a state inmate's petition for habeas corpus on the grounds that the rule announced in *Simmons v. South Carolina*, 512 U.S.

5

154 (1994),[3] was either not a new rule, and therefore was applicable to his case, or, if it was a new rule, it was retroactive to his case. *Mueller*, 478 S.E. 2d at 544. The petitioner in *Mueller* was convicted of capital murder and was sentenced to life in prison without the possibility of parole, the only alternative to a death sentence for a capital murder conviction in the Commonwealth. *Id.* At the petitioner's sentencing hearing, defense counsel was not permitted to inform the jury of the fact that the life sentence alternative did not include the possibility of parole, and the petitioner argued that, under *Simmons*, this was a violation of his due process rights. *Id.* The Supreme Court of Virginia analyzed *Simmons* under *Teague* and concluded that *Simmons* did lay down a new rule, *id.* at 547-48, and that the rule did not apply retroactively to the petitioner's case because it was neither substantive nor a watershed procedural rule, *id.* at 549.

That the *Mueller* court employed *Teague* is not enough to indicate that a Virginia court would not consider Petitioner's claim to be time-barred. The *Mueller* court found *Simmons* not to be retroactive, and there are no reported cases in which a Virginia court has employed *Teague* to find that a new rule does apply retroactively. In fact, *Mueller* appears to stand alone in Virginia's case law. In the eighteen years since *Mueller* was decided, no other reported Virginia case applies *Teague* and no reported cases cite *Mueller* for the proposition that a habeas petition based on a new rule could overcome the time bar in Virginia Code Section 8.01-654(A)(2). On the

---

[3] The *Simmons* rule is that "where the State puts the defendant's future dangerousness in issue, and the only available alternative sentence to death is life imprisonment without parole, due process entitles the defendant to inform the capital sentencing jury-by either argument or instruction-that he is parole ineligible." *Mueller*, 478 S.E.2d at 546-47 (quoting *Townes v. Murray*, 68 F.3d 840, 850 (4th Cir.1995)) (internal quotation marks omitted).

6

other hand, there is authority indicating that the Commonwealth's time limit for the filing of habeas petitions is as strict as the *Johnson* court considered it to be. *See, e.g., Lahey v. Johnson,* 720 S.E.2d 534, 537 (Va. 2012) (holding that petition was time-barred where petitioner did not pay the last five dollars of filing fee until seven days after period elapsed).

In light of this, the Court turns to Justice O'Connor's concurrence in *Harris v. Reed*, 489 U.S. 255, for guidance. There, she exhorts district courts to exercise caution in dismissing habeas petitions that present novel issues for lack of exhaustion, arguing that courts should use their judgment to determine whether state law would bar consideration of the claim, and not dismiss a claim where doing so would result in "a game of judicial ping-pong." *Harris*, 489 U.S. at 269-70. Virginia's strict adherence to its time limit on the filing of habeas petitions, coupled with the dearth of precedent indicating that Virginia courts are willing to find new rules to be retroactive under *Teague*, indicates to the Court that a Virginia court would be likely to consider Petitioner's claim to be time-barred. Accordingly, Petitioner's failure to exhaust his claim is excused.

Even though his state remedies are exhausted, this Court may only address the merits of Petitioner's claims if they were also not procedurally defaulted in state court. *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). However, procedural default is an affirmative defense to a petition for habeas corpus that is waived if not pled. *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999) (citing *Trest v. Cain*, 522 U.S. 87 (1997)). Because Respondent has not raised this defense to Petitioner's *Miller* claim,[4] he has waived it. Respondent *has* asserted the

---

[4] Respondent does mention procedural default in his Memorandum, but does so only to argue that if Petitioner challenged his guilty plea, that challenge would be procedurally defaulted. Resp't's Mem. ¶ 44 & n.2.

federal habeas statute of limitations as a defense, however, and the Court still may not reach the Petition's merits unless it was timely filed.

## B. Timeliness

The Petition is timely if the *Miller* rule applies retroactively. State prisoners have one year from the date their state judgments become final, 28 U.S.C. § 2244(d)(1)(A), or from the date on which a new retroactive constitutional right on which they rely was recognized by the Supreme Court, § 2244(d)(1)(C), to file a federal habeas petition. Respondent argues that Petitioner's claim is time-barred under § 2244(d)(1)(A) and that § 2244(d)(1)(C) does not apply because *Miller* is not retroactive on collateral review. Resp't's Mem. ¶¶ 8-10. Petitioner filed on June 24, 2013, nearly nine years after his state court judgment became final in 2004, so the Petition is clearly untimely under § 2244(d)(1)(A). Resp't's Mem. ¶ 8. However, this was just under a year after the Supreme Court's June 25, 2012, *Miller* decision. *See* 132 S. Ct. at 2455. Thus, if *Miller* applies retroactively, then the Petition is timely because it was filed within one year of the Supreme Court's decision in that case.

## C. Retroactivity of *Miller*

In addition to his statute of limitations defense, Respondent argues that *Teague v. Lane* bars application of the *Miller* rule to Petitioner's case, because *Miller* was decided after Petitioner's judgment became final and announces a new constitutional rule that is not retroactive on collateral review. The Court notes that the Fourth Circuit has concluded that other habeas petitioners have made at least a prima facie showing that *Miller* is retroactive. Pet'r's Reply 7 n.2 (citing eight unpublished Fourth Circuit orders certifying successive petitions relying

8

on *Miller*); *see also Evans-Garcia v. United States*, 744 F.3d 235, 238 (1st Cir. 2014) (holding that petitioner made a prima facie showing that *Miller* is retroactive); *Johnson v. United States*, 720 F.3d 720, 720-21 (8th Cir. 2013) (same); *Pendleton*, 732 F.3d at 282 (3d Cir. 2013) (same). These orders are without commentary, unpublished, and relate to the lower prima facie showing standard for successive petition certification, so they are far from conclusive on this issue. Similarly, in a recent Fourth Circuit case, the United States conceded that, "*Miller* established 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.' 28 U.S.C. §§ 2255(h)(2), 2244(b)(2)(A)." *In re Tadd Errol Vassell*, No. 13-284, at *6 (4th Cir. March 19, 2014).[5] Because neither the Supreme Court nor the Fourth Circuit has expressly ruled on *Miller*'s retroactivity, and Respondent has raised the *Teague* defense, the Court must consider whether *Teague* bars Petitioner's *Miller* claim before reaching the merits of that claim. *Beard v. Banks*, 542 U.S. 406, 412 (2004).

### 1. *Miller* announces a new rule.

*Teague* analysis generally requires a court to begin by determining whether the rule is "new" for the purposes of the doctrine. *Beard*, 542 U.S. at 411. This determination is not required here, however, because the parties agree that *Miller* announces a new rule. Resp't's Mem. ¶¶ 12-13; Pet'r's Reply at 4-5; *see Evans-Garcia v. United* States, 744 F. 3d 235, 238 (1st

---

[5] Apparently, this is the litigation position of the United States nationwide since the Department of Justice has conceded that *Miller* is retroactive in other cases. *See Evans-Garcia v. United States*, 744 F.3d 235, 238 (1st Cir. 2014) (certifying a second or successive §2255 petition for consideration by the district court where "the government has [] conceded that *Miller* has been made retroactive, at least under the prima facie standard"); *Johnson v. United States*, 720 F.3d 720, 720-21 (8th Cir. 2013) (authorizing the filing of a successive § 2255 motion where "[t]he government here has conceded that *Miller* is retroactive"); *Wang v. United States,* No. 13–2426 (2d Cir. July 16, 2013) (unpublished) (relying in part on the government's concession to certify a second or successive habeas petition based on *Miller*). A position taken by the Department of Justice is certainly not binding on the Court, but is worthy of consideration in this case.

Cir. 2014) (accepting government's concession that *Miller* announced a new rule); *In re Pendleton*, 732 F.3d 280, 282 (3d Cir. 2013) (per curiam) (accepting parties' stipulation that *Miller* announced a new rule).

### 2. *Miller*'s new rule is not barred by *Teague*.

*Teague* prevents habeas petitioners from claiming the benefit of such new rules unless the rule is (1) a substantive rule that decriminalizes a form of primary conduct or that categorically bars "a certain category of punishment for a class of defendants because of their status or offense," *Beard*, 542 U.S. at 416 & n.7 (2004) (quoting *Penry v. Linaugh*, 492 U.S. 302, 330 (1989)); or (2) a "'watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding,'" *id.* at 417 (quoting *Penry*, 492 U.S. at 330).

Petitioner offers a third potential exception to *Teague*'s bar, contending that where the Supreme Court applies a new rule retroactively on collateral review, the Court has impliedly made the rule retroactive on collateral review for similarly situated petitioners. Pet. 20 (citing *Teague*, 489 U.S. at 316). However, the analysis that Petitioner cites for the proposition that there is a third exception concludes:

> We therefore hold that, implicit in the retroactivity approach we adopt today, is the principle that habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review through one of the two exceptions we have articulated.

*Teague*, 489 U.S. at 316.   Rather than creating a third exception for a sort of equitable retroactivity as Petitioner contends, the *Teague* Court's discussion of fairness to similarly situated petitioners appears instead to create at most a presumption that, when the Supreme Court

10

retroactively applies a new rule to a case before it on collateral review, it does so pursuant to one of *Teague*'s two exceptions. In other words, when the Supreme Court applies a new rule retroactively on collateral review, lower courts may assume that the rule falls within one of *Teague*'s two exceptions.

The Court refuses to make such an assumption in this case, however, due in part to the Supreme Court's holdings in *Padilla v. Kentucky*, 559 U.S. 356 (2010), and *Chaidez v. United States*, 133 S.Ct. 1103 (2013). The Supreme Court announced a new constitutional rule in *Padilla*, where the petitioner was challenging his conviction in a collateral appeal. *Padilla*, 559 U.S. at 374–75; *Chaidez*, 133 S.Ct. at 1113. The Supreme Court later held that the new constitutional rule applied to Padilla's collateral claim would not be applied retroactively to other cases on collateral review. *See Chaidez*, 133 S.Ct. at 1113. Accordingly, this Court must determine whether one of *Teague*'s two exceptions applies to the rule such that Petitioner may claim its benefit.

### a. *Miller* does not announce a watershed rule of criminal procedure.

*Teague*'s watershed procedural rule exception is extremely narrow. It is not enough that a new procedural rule be profoundly important; it must have a significant impact "on the accuracy of the fact finding process." *United States v. Mathur*, 685 F.3d 396, 400 (4th Cir. 2012) (quoting *Whorton v. Bockting*, 549 U.S. 406, 419 (2007)) (internal quotation marks omitted), *cert. denied*, 133 S. Ct. 1457 (2013). The only rule the Supreme Court has offered as an example of such a watershed is the right to counsel announced in *Gideon v. Wainwright*, 372 U.S. 335 (1963). While *Miller* does in some sense affect the accuracy of fact finding at the sentencing stage by

requiring courts to consider facts that could mitigate a juvenile defendant's culpability, the impact is not so profound as is *Gideon*'s. *See Johnson*, 2013 WL 5663068, at *6; *Teague*, 489 U.S. at 313 (limiting the scope of the second exception to those new procedures without which the likelihood of an accurate conviction is seriously diminished). Accordingly, the *Miller* rule does not fall within *Teague*'s watershed procedural rule exception. The question, then, is whether the *Miller* rule is substantive.

### b. *Miller* announces a substantive rule.

Because the new rule announced in *Miller* effectively requires a finding of aggravating circumstances before imposing a sentence of life-without-parole on a juvenile, it is substantive and falls within the first exception to the *Teague* bar. Petitioner argues that the *Miller* rule is substantive because it categorically bars the imposition of a mandatory sentence of life-without-parole. Pet'r's Reply 7. However, the *Miller* Court stated in dictum that "[o]ur decision does not categorically bar a penalty for a class of offenders or type of crime." *Miller*, 132 S.Ct. at 2471. Indeed, *Miller* does not categorically prohibit life-without-parole for juveniles, and this has led many courts to conclude that *Miller* cannot be a substantive rule. *E.g., In re Morgan*, 713 F.3d 1365 (11th Cir. 2013). Others give more weight to the reasoning that led the *Miller* Court to its rule, finding that the Court's reliance on juveniles' inherently lesser culpability makes *Miller* more like *Roper v. Simmons*, 543 U.S. 551 (2005) (categorically barring the death penalty for minors), and *Graham v. Florida*, 560 U.S. 48 (2010) (categorically barring life-without-parole for juvenile non-homicide offenders). *See, e.g. Ex parte Maxwell*, 424 S.W.3d 66 (Tex. Crim. App. 2014).

12

There is no consensus among the courts addressing this issue. *See Malvo v. Mathena*, No. 2:13cv375, at *16-25 (E.D. Va. April 3, 2014) (Report and Recommendation collecting cases). Although the majority of opinions addressing the issue in this district have found *Miller* establishes a new procedural rule, and is not retroactive,[6] the undersigned finds the argument that *Miller* creates a new substantive rule to be more persuasive.

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Supreme Court considered the retroactivity of the new rule it announced in *Ring v. Arizona*, 536 U.S. 584 (2002) (holding that state law allowing trial judge, sitting without a jury, to find aggravating facts necessary for imposition of death penalty violated the defendant's Sixth Amendment right to a jury trial). The Court determined that the *Ring* rule was necessarily procedural, not substantive, because it did not "alter the range of conduct Arizona law subjected to the death penalty." *Summerlin*, 542 U.S. at 352. The petitioner argued that *Ring* essentially added a new element to the offense of capital murder. *Id.* at 354. The Court disagreed with the petitioner's interpretation, but agreed that, if *Ring* had added a new element to this offense, it would have been a substantive rule:

> This Court's holding that, *because Arizona* has made a certain fact essential to the death penalty, that fact must be found by a jury, is not the same as *this Court's* making a certain fact essential to the death penalty. The former was a procedural holding; the latter would be substantive.

*Id.* at 354 (dictum) (emphasis in original).

---

[6] *Landry v. Baskerville*, No. 3:13cv367, 2014 WL 1305696, at *7-8 (E.D. Va. March 31, 2014) (Lauck); *Sanchez v. Vargo*, No. 3:13cv400, 2014 WL 1165862, at *4-7 (E.D. Va. March 21, 2014) (Payne); *Contreras v. Davis*, No. 1:13cv772, 2013 WL 6504654, at *3 (E.D. Va. Dec. 11, 2013) (Cacheris); *Johnson v. Ponton*, No. 3:13cv404, 2013 WL 5663068 (E.D. Va. Oct. 15, 2013) (Spencer); *Stewart v. Clarke*, No. 2:13cv388 (E.D. Va. Mar. 13, 2014) (Report and Recommendation adopted in Final Order entered April 28, 2014) (Morgan); *Dumas v. Clarke*, No. 2:13cv398 (E.D. Va. May 13, 2014) (Report and Recommendation to Honorable Rebecca Beach Smith) (D. Miller); *Malvo v. Mathena*, No. 2:13cv375, at *16-25 (E.D. Va. April 3, 2014) (Report and Recommendation to Honorable Raymond A. Jackson) (Leonard).

13

Respondent here relies on this passage for the proposition that, "when a rule addresses the manner in which a state acts, the rule is procedural." Resp't's Mem. ¶ 21 (quoting *Summerlin*, 542 U.S. at 354). But the above quoted passage clearly indicates that, where the Supreme Court imposes a rule that "mak[es] a certain fact essential to" the penalty in question, the rule is substantive. *Miller* imposes just such a requirement. It requires individualized sentencing for juvenile offenders, forcing sentencers to "examine all [mitigating] circumstances before concluding that life without any possibility of parole was the appropriate penalty." *Miller*, 132 S. Ct. at 2469; *see also United States v. Reingold,* 731 F.3d 204, 214 (2d Cir. 2013) (holding that *Miller* imposed a "categorical rule" that requires individualized sentencing for juveniles faced with a sentence of life-without-parole). Justice Breyer's concurrence in *Miller* expressly argues this point, contending that under *Miller*'s new rule, a court would have to find at a minimum that the defendant "killed or intended to kill the . . . victim" before sentencing him to life-without-parole. *Id.* at 2477 (Breyer, J., concurring) (quoting *Graham*, 560 U.S. at 69) (internal quotation marks omitted).

*Miller* does not merely control the manner in which states sentence juveniles to life in prison without parole; it also controls whether they may do so at all. The key factor to the *Miller* Court was the lesser culpability of juvenile defendants, not the nature of the crime or the punishment: "*Miller's* statements regarding children's 'diminished culpability and greater prospects for reform' are not punishment-specific." *United States v. Hunter*, 735 F.3d 172, 175 (4th Cir. 2013) (quoting *Miller*, 132 S. Ct. at 2464). So *Miller* does more than change the procedure for determining a juvenile's culpability: it requires that the determination of

14

culpability actually occur. *See Miller*, 132 S. Ct. at 2466 ("[T]he mandatory penalty schemes at issue here prevent the sentencer from taking account of these central considerations."). Because juveniles are presumed to have less culpability than adults, courts must at least impliedly determine that an individual juvenile offender is more culpable than the ordinary juvenile offender before imposing a sentence of life-without-parole. *Id.* at 2467-69 ("[G]iven . . . children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon."); *see also Jones v. State*, 122 So. 3d 698, 702 (Miss. 2013), *reh'g denied* (Sept. 26, 2013) (holding that the *Miller* rule is substantive because it added the requirement that states consider "applicable *Miller* characteristics and circumstances").

   *Miller*'s focus on culpability puts it firmly in the line of cases like *Roper* and *Graham* that relied on the lesser culpability of a class of defendants to find an Eighth Amendment requirement for a proportionately lesser punishment. *See Hunter*, 735 F.3d at 175 (referring to "*Miller* and its predecessors such as *Graham*"); *see also United States v. Shill*, 740 F.3d 1347, 1356 (9th Cir. 2014) (construing *Miller* as announcing "another categorical rule" similar to that in *Graham*); *United States v. Marshall*, 736 F.3d 492, 498 (6th Cir. 2013) (categorizing *Miller*, *Graham*, and *Roper* as "decisions limiting the types of sentences that can be imposed upon juveniles"); *United States v. Ousley*, 698 F.3d 972, 975 (7th Cir. 2012) (construing *Miller* as "extending *Graham* to juvenile murderers"), *cert. denied*, 133 S. Ct. 1480 (2013). But both *Roper* and *Graham* categorically barred a particular punishment for a particular class and several courts have distinguished *Miller* on that ground, finding that its rule is procedural because it does

15

not altogether prohibit sentences of life-without-parole for juveniles. *E.g., Morgan*, 713 F.3d at 1367-68 ("*Miller* did not prohibit the imposition of a sentence of life imprisonment without the possibility of parole on minors."); *Craig v. Cain*, No. 12-30035 (5th Cir. Jan. 4, 2013) (unpublished) (per curiam) ("*Miller* does not satisfy the test for retroactivity because it does not categorically bar all sentences of life imprisonment for juveniles."); *Stewart v. Clarke*, No. 2:13cv388, *7-8 (E.D. Va. March 13, 2014) (report and recommendation adopted in final order entered April 28, 2014).

However, *Miller does* effectively ban the imposition of a particular punishment on a particular class of people: it prohibits the imposition of a life sentence without the possibility of parole on juvenile offenders whose culpability is that of an ordinary juvenile offender. *See Miller*, 132 S. Ct. at 2477 (Breyer, J., concurring) (arguing that *Miller* prohibits sentences of life-without-parole for juveniles who have not been found to have "killed or intended to kill the . . . victim"); *see also State v. Mantich*, 842 N.W.2d 716, 731 (Neb. 2014) (holding *Miller* is substantive because it categorically banned imposition of "a mandatory sentence of life"); *Iowa v. Ragland*, 836 N.W.2d 107, 115 (Iowa 2013) (holding that *Miller* is substantive because it requires additional fact-finding before sentencing juveniles to life-without-parole). Because fact-finding is required to determine whether an individual defendant is a member of this class, "*Miller* requires courts to establish a procedure providing for an individualized sentencing hearing tailored to the unique attributes of juveniles when prosecuted as adults for homicide and facing a sentence of life without parole." *Ragland*, 836 N.W.2d at 115; *see also People v. Davis*, 6 N.E.3d 709 (Ill. 2014) ("*Miller* places a particular class of persons covered by the statute—

16

juveniles—constitutionally beyond the State's power to punish with a particular category of punishment—mandatory sentences of natural life without parole."); *In re Rainey*, No. 138921, at *6 (Cal. Ct. App. Feb. 28, 2014) (not published) ("[T]he *Miller* rule constitutes a new substantive rule, and is not subject to *Teague*'s retroactivity bar, because it prohibits 'a certain category of punishment [LWOP] for a class of defendants [juvenile offenders convicted of homicide] because of their status [chronological age and its hallmark features] or offense.'") (quoting *Penry*, 492 U.S. at 330) (alterations in original).[7] Because the *Miller* rule is a substantive rule, it is not subject to the *Teague* bar and the Petition was also timely filed under 28 U.S.C. § 2244 (d)(1)(C). Accordingly, the Court may consider the merits of Petitioner's claim.

### D. Merits of the *Miller* claim

Because a state court has not considered the merits of Petitioner's *Miller* claim, this Court will review it *de novo*. *See Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999) (construing 28 U.S.C. § 2254(d)), *aff'd,* 528 U.S. 225 (2000). *Miller* struck down all sentencing schemes that

---

[7] There is also some indication that the combined effect of *Miller* and *Roper* is that juvenile defendants may not be charged with capital murder at all. Virginia Code Section 18.2-10(a) flatly requires that defendants convicted of violating Code Section 18.2-31, Capital Murder, be sentenced to either death or life in prison. But the statute also bars the imposition of the death penalty on juveniles in accordance with *Roper*. This leaves a life sentence as the only permissible sentence for a juvenile convicted of capital murder. If that mandatory life sentence is prohibited under *Miller*, then it is questionable whether a juvenile may be charged with capital murder in Virginia. For example, in *Johnson v. Commonwealth*, a case before the Virginia Court of Appeals on the petition for habeas corpus of a juvenile defendant convicted of first degree murder, the court noted the impact of *Miller*: "In response to the decision in *Miller*, the Commonwealth moved to amend the capital murder indictment to change it to a charge of first-degree murder. Code § 18.2–32 classifies first-degree murder as a Class 2 felony, and Code § 18.2–10(b) states that Class 2 felonies are punishable by a range of twenty years to life imprisonment." No. 1941–12–3 (Va. Ct. App. Mar. 25, 2014) (not yet published). In jurisdictions like Virginia, which distinguish between capital and first degree murder by providing a mandatory sentence of "death or life" for the former, *Miller* may have invalidated an entire category of criminal offense for juveniles.  *See also, e.g., Washington v. State*, 103 So. 3d 917, 918 (Fla. Dist. Ct. App. 2012), *reh'g denied* (Dec. 6, 2012) (holding that *Roper* and *Miller* prevent sentencing of a juvenile under Florida's felony murder statute requiring either death penalty or life-without-parole).

impose mandatory sentences of life-without-parole on juveniles and held that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." 132 S. Ct. at 2475. In dictum, the Court suggested that this means that, when sentencing a juvenile, the sentencing authority must have the discretion "to choose, rather than a life-without-parole sentence, a lifetime prison term *with* the possibility of parole or a lengthy term of years." *Id.* at 2474-75.

### 1. Petitioner was sentenced to life-without-parole.

Virginia requires that defendants convicted of capital murder be sentenced to death or life in prison. Va. Code § 18.2-10(a). Because the death penalty cannot be imposed on juvenile offenders, the only available sentence for a juvenile convicted of capital murder in Virginia is life. Va. Code § 18.2-10(a) (permitting the death penalty only for adult offenders who are not mentally retarded). Respondent points out that the sentencing schemes expressly struck down in *Miller*—those of Alabama and Arkansas—expressly required a sentence of "life without parole". Resp't's Mem. ¶ 49. He argues that because Virginia's life sentence mandate does not include the words "without parole", it is not mandatory life-without-parole for the purposes of *Miller*. *Id.* But as Petitioner points out, Section 18.2-10(a), enacted in 2008, need not have explicitly included the language "without parole" because Virginia abolished parole for *all* felony convictions in 1994. Va. Code § 53.1-165.1. Where there is no parole, a life sentence is necessarily life-without-parole. *See, e.g., State v. Taylor*, 842 N.W.2d 771, 780 (Neb. 2014) (holding that Nebraska sentencing statute requiring life sentence for juveniles convicted of murder violates *Miller* despite absence of the words "without parole"). This is consistent with the

18

*Miller* Court's inclusion of Virginia among the "29 jurisdictions . . . [that] make a life-without-parole term mandatory for some juveniles convicted of murder in adult court." *Miller*, 132 S. Ct. at 2471 (citing Brief for Respondent Alabama at 17-18).

### 2. Petitioner's sentence violates *Miller*.

Respondent argues that even if Petitioner was sentenced to life-without-parole for the purposes of *Miller*, the sentence was not "mandatory" because Virginia law gives judges "'wide latitude' . . . in suspending sentences." Resp't's Mem. ¶ 51 (quoting *Dunham v. Commonwealth*, 721 S.E.2d 824, 826 (Va. Ct. App. 2012)). As an example of a court suspending all but a portion of a life sentence, Respondent cites *Moore v. Hinkle*, 527 S.E.2d 419, 422 (Va. 2000), wherein the Supreme Court of Virginia noted without comment that the trial court had sentenced the petitioner to a term of life imprisonment, suspending all but ten years of the sentence. Resp't's Mem. ¶ 51. Virginia Code Section 19.2-303 does give trial courts this degree of discretion, but as Petitioner points out, *Miller* does not give sentencing authorities the *discretion* to consider a defendant's youth before sentencing him to life-without-parole, it *requires* that they do so. Pet'r's Reply 18.

In fact, *Miller* does not merely require sentencing authorities to reflect on the defendant's age; it requires consideration of specific age-related culpability factors. These factors are:

(1) the juvenile defendant's "immaturity, impetuosity, and failure to appreciate risks and consequences[;]"

(2) "the family and home environment that surrounds him[;]"

(3) "the circumstances of the homicide offense including the extent of his participation in the conduct and the way familial and peer pressures may have affected him[;]"

19

(4) the impact of the defendant's youthful incapacity to bargain with prosecutors for a lesser charge or assist in his own defense; and

(5) "the possibility of rehabilitation."

*Miller*, 132 S. Ct. at 2468 (concluding that sentencing authorities should have considered the appellants' lack of intent to kill, inability to appreciate risks, and violent and abusive family lives before sentencing them to life-without-parole). A sentencing scheme like Virginia's, which technically permits but does not require consideration of these factors, is insufficient to meet the standard *Miller* prescribes because it does not command consideration of the mitigating effect of a juvenile defendant's youth.[8] *See Johnson*, 2013 WL 5663068, at *1 n.1 ("Because both [petitioner's] parole ineligibility and his life sentence were dictated by [Virginia] statute, [his] sentence was a mandatory life sentence within the meaning of *Miller*.").

### 3. Petitioner did not waive his right to challenge his sentence.

Finally, Respondent argues that, even if Virginia's sentencing scheme is unconstitutional as applied to Petitioner, Petitioner waived his right to challenge the resulting cruel and unusual punishment by pleading guilty to capital murder. Resp't's Mem. ¶¶ 44-46. Respondent cites *Tollett v. Henderson*, 411 U.S. 258, 266 (1973), for the proposition that by pleading guilty, a defendant waives his right to challenge non-jurisdictional violations of his rights occurring *prior*

---

[8] Furthermore, some courts have held that even where state sentencing schemes are permissible under *Miller*, individual sentences are invalid when they are not imposed after consideration of the *Miller* factors. *E.g. In re Rainey*, No. 138921 (Cal. Ct. App. Feb. 28, 2014) (not yet published) (invalidating juvenile defendant's sentence of life-without-parole even though trial court had discretion to impose lesser sentence because trial court did not consider *Miller* factors). The facts here show that Petitioner was not given his life-without-parole sentence after consideration of the mitigating effect of his youth; it is therefore invalid under *Miller*. It is clear that the trial court here felt it was bound by Virginia law to impose a sentence of death or life-without-parole on Petitioner, and the trial transcript demonstrates that this choice was the only question the court considered with regard to sentencing. Trial Tr. 18:11-24, *Commonwealth v. Jackson*, No. CR 02-005 (Va. Cir. Ct. Sept. 1, 2004) ("Pursuant to the plea agreement . . . the Court sentences you to imprisonment for life.").

20

to the plea. *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010). This is irrelevant here, though, because Petitioner has not challenged his guilty plea or the resulting conviction.

Respondent further argues, however, that Petitioner is essentially estopped from challenging his sentence because he pled guilty to capital murder, a charge with a "fixed punishment." Resp't's Mem. ¶ 45. In support of the notion of an implied appeal waiver, Respondent cites *United States v. Mason*, 495 Fed. Appx. 373 (4th Cir. 2012) (unpublished), and *United States v. Blick*, 408 F.3d 162 (4th Cir. 2005). But in both of these cases, the court is very careful to make clear that it is holding the appellant to an *express* written "knowing and voluntary" appeal waiver. *Mason*, 495 Fed. Appx. at 375; *Blick*, 408 F.3d at 169. Here, the parties agree that Petitioner did not expressly waive his right to challenge his sentence and the Court finds that he could not have done so impliedly. Because Virginia law mandates a sentence of life-without-parole for juveniles convicted of capital murder and does not require sentencing judges to consider the *Miller* factors, Petitioner's sentence is unconstitutional and the Court RECOMMENDS that his Petition be GRANTED.

### III. RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that Respondent's Motion to Dismiss (ECF No. 8) BE DENIED, and Petitioner's Writ of Habeas Corpus (ECF No. 1) be GRANTED to the extent that the Court vacate his sentence and order the Circuit Court for the City of Chesapeake to resentence him as prescribed by Virginia law, and in accordance with the dictates of *Miller v. Alabama*.  It is further recommended that Petitioner remain in custody of the VDOC until his resentencing.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208 (1984).

/s/
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
May 16, 2014